```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
```

| | |
|---|---|
| TVnGO Ltd. (BVI), | |
|     Plaintiff, | Civil No. 18-10238 (RMB/KMW) |
|     v. | **OPINION** |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., | |
|     Defendants. | |

APPEARANCES:

SANDELANDS EYET LLP
By: Matthew T. Eyet, Esq.
1545 U.S. Highway 206, Suite 304
Bedminster, New Jersey 07921

    and

KING & SPALDING LLP
By:  Charles E. Cantine, Esq.
     Joseph Diamante, Esq.
     Timothy H. Caine, Esq.
1185 Avenue of the Americas, 35th Floor
New York, New York 10036
               *Counsel for Plaintiff*

WALSH PIZZI O'REILLY FALANGA LLP
By:  Liza M. Walsh, Esq.
     Selina M. Ellis, Esq.
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, New Jersey 07102

    and

MORGAN, LEWIS & BOCKIUS LLP

By: Natalie Bennett, Esq.
    Collin W. Park, Esq.
    Eric Kraeutler, Esq.
    Ghee J. Lee, Esq.
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
    *Counsel for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

In this patent infringement suit, Plaintiff TVnGO Ltd. (BVI) asserts that Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"), are infringing five of TVnGO's patents[1] which claim methods and devices that make televisions "smart"-- i.e., able to display both television content and internet streaming content. LG asserts that the claims of all five patents are unenforceable based on the doctrine of inequitable conduct. LG makes this assertion in both an affirmative defense and a counterclaim.[2] Before the Court is TVnGO's Motion to Dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) / Motion to Strike the affirmative

---

[1] The Patents-in-Suit are U.S. Patent Nos. 8,132,220; 9,124,945; 9,392,339; 9,407,969; and 9,794,621, respectively, the '220 patent, the '945 patent, the '339 patent, the '969 patent and the '621 patent. "Each of the '945, '339, and '969 patents are continuations of the '220 patent. The '621 patent is a continuation of the '969 patent." (Thirteenth Affirmative Defense, "TAD", ¶ 19)

[2] The affirmative defense and counterclaim are entirely coextensive. See Counterclaim Count 11 ¶ 48 ("LGE repeats and re-alleges paragraphs 13-41 of its Thirteenth Affirmative Defense (Inequitable Conduct) to TVnGO's Complaint as fully set forth herein.").

2

defense pursuant to Fed. R. Civ. P. 12(f).  For the reasons stated herein, the motion will be denied.

**I.**

LG's inequitable conduct theory is based on alleged failures to disclose-- or in some instances, with respect to the '220 and '621 patents[3], alleged failures to *properly* disclose-- prior art to the USPTO during the prosecution of the applications that resulted in the Patents-in-Suit.  The prior art is: (1) Japanese Patent Publication No. JP2003-018575 ("the '575 Publication") and (2) additional references disclosing the same subject matter of the European counterpart to the Patents-in-Suit ("the EP Publications").[4]

**A. The '220 patent prosecution**

The application that would result in the issuance of the '220 patent[5] was filed on July 6, 2007, and the '220 patent issued on March 6, 2012. (TAD ¶¶ 19, 24)  LG asserts that at no time during this prosecution did TVnGO's prosecuting attorneys, Mr. Klima and Mr. Kavrukov (nor anyone else), disclose the EP Publications to the USPTO. (Id. ¶ 38)  Further, LG explains why, in its view, this nondisclosure matters.  LG asserts that the EP

---

[3] Of the Patents-in-Suit, the '220 patent was the first to issue and the '621 patent was the last to issue. (TAD ¶¶ 21, 29)

[4] See TAD ¶¶ 14, 17, 35-36.  TVnGO does not dispute that these two items are, indeed, prior art, as LG alleges.

[5] U.S. Application No. 11/794,825 (TAD ¶ 19).

3

Publications were "materially relevant" "because these references were used as a ground for rejecting the counterpart European patent application" to the Patents-in-Suit. (Id. ¶ 38) LG elaborates, "[h]ad the USPTO received and considered the EP Publications and the material relevance of the EP Publications to the patentability of the Patents-in-Suit, it would have been evident that at least one independent claim of each of the Patents-in-Suit was invalid," which would have led the USPTO to reject TVnGO's patent application. (Id. ¶ 39)

Somewhat similarly, LG alleges that Mr. Klima "disclosed" the '575 Publication to the USPTO in a manner that effectively prevented the USPTO from considering it. Specifically, LG alleges that

> [o]n December 23, 2011, more than six months after the participants in the prosecution of the ['220 patent] Application became aware of the '575 Publication and after the prosecution of the [] Application had already closed, Mr. William L. Klima of the Nath Law Group filed an Information Disclosure Statement ("IDS") in the [] Application, listing several references, including the '575 Publication, and enclosing a copy of the '575 Publication in Japanese with an English abstract. However, Mr. Klima did not include in the IDS any requisite certification statement under 37 C.F.R. 1.97(e) or any explanation as to the relevance of the listed references, including the '575 Publication, despite the prior knowledge that the '575 Publication was applied by the Japanese Patent Office to reject the Japanese counterpart '930 JP Application.

(TAD ¶ 22)

LG alleges that five days later, the USPTO notified Mr. Klima that the IDS did not comply with the applicable regulation and therefore the information in the IDS "had not been considered." (TAD ¶ 23) LG further alleges that no one sought to correct the deficiency, and thereafter the '220 patent issued on March 6, 2012. (Id. ¶ 24)

LG alleges that the '575 Publication was materially relevant to the '220 patent application because the Japanese Patent Office applied the '575 Publication "in the rejection of the [Japanese] counterpart" to the '220 patent application. (TAD ¶ 24)

### B. The '621 patent prosecution

The application that would result in the issuance of the '621 patent was filed on November 25, 2015, and the '621 patent issued on October 17, 2017. (TAD ¶¶ 27, 29)

With respect to the EP Publications, LG alleges they were disclosed in an IDS filed with the USPTO on January 26, 2017. (TAD ¶ 38) LG does not allege that there was any problem with this particular IDS filed by Mr. Kavrukov in this particular prosecution, which was last in the chronological order of the applications at issue.

Somewhat similarly, with respect to the '575 Publication, LG alleges the '575 Publication was also disclosed in an IDS filed by Mr. Kavrukov on January 26, 2017. (TAD ¶ 28) However,

5

LG alleges that the IDS merely "listed the '575 Publication but did not provide information regarding the material relevance of the '575 Publication to the patentability of the '621 patent." (Id.)

Because the '621 patent is alleged to be "a continuation of the '969 Patent" which patent is, in turn, allegedly a continuation of the '220 patent (TAD ¶ 19), LG asserts that the EP Publications and the '575 Publication are materially relevant to the '621 patent application in the same way that those references are allegedly materially relevant to the '220 patent application. (See Id. ¶¶ 33, 41)

### C. The prosecutions of the other Patents-in-Suit

LG alleges that neither the EP Publications nor the '575 Publication were disclosed at all during the prosecutions of the applications for the '945, '339 and '969 patents. (TAD ¶¶ 25, 38) Because the these patents are each alleged to be continuations of the '220 patent (Id. ¶ 19), LG asserts that the EP Publications and the '575 Publication are materially relevant in the same way that those references are allegedly materially relevant to the '220 patent application. (See Id. ¶¶ 33, 41)

## II.

Fed. R. Civ. P. 12(b)(6) provides in relevant part, "a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted."

Similarly, Fed. R. Civ. P. 12(f) provides in relevant part, "[t]he Court may strike from a pleading an insufficient defense."[6]

A counterclaim or affirmative defense of inequitable conduct sounds in fraud and therefore is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). "'Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law.'" Sanders v. The Mosaic Co., 418 F. App'x 914, 918 (Fed. Cir. 2011) (quoting Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1318 (Fed. Cir. 2009)). "To plead inequitable conduct, 'the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.'" Id. (quoting Exergen).

## III.

"A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and

---

[6] Rule 12 expressly states that "[a] motion under this rule may be joined with any other motion allowed by this rule." Fed. R. Civ. P. 12(g)(1). Joining a 12(b)(6) motion with a 12(f) motion is particularly appropriate in this case where the counterclaim challenged by the 12(b)(6) motion is identical to the affirmative defense challenged by the 12(f) motion.

7

withheld that information with a specific intent to deceive the PTO." Delano Farms Co. v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing Exergen, 575 F.3d at 1318, 1330 and Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011) (en banc)).

LG states its inequitable conduct theory thusly: "the public record regarding [TVnGO's] dealings with the [USPTO] and foreign patent offices [reveals] a pattern of selectively withholding prior art or 'disclosing' the prior art in a non-compliant way that [TVnGO] knew would shield the reference from consideration." (Opposition Brief, Dkt 25, p. 1) According to LG, it is this pattern-- demonstrated over the span of all five patent prosecutions at issue-- that supports a reasonable inference that Mr. Klima and Mr. Kavrukov had the requisite intent to deceive the USPTO. (Id. p. 16-17)

TVnGO asserts that LG's inequitable conduct claim is insufficiently particularized and therefore fails as a matter of law. Each of TVnGO's arguments is addressed in turn.

### A. **Materiality**

First, TVnGO argues that "LG makes conclusory allegations that references are material merely because they were identified in foreign patent prosecutions." (Moving Brief, Dkt 23-1, p. 10; Reply Brief, Dkt 26, p. 2, 6) This argument misstates the allegations of LG's Answer and Counterclaim. LG does not allege

that references were merely *identified* in foreign patent prosecutions. Rather, LG specifically alleges that both the EP Publications and the '575 Publication were the basis for *rejecting* claims in the foreign patent applications. (TAD ¶¶ 20, 24, 25, 35-36, 38) As LG explains, the alleged facts that "the '575 [Publication] and the [EP Publications] [] persuaded foreign patent offices to question the novelty of the claimed subject matter" support a reasonable conclusion that those references were material. (Opposition Brief, Dkt 25, p. 19, 21) That is, the factual allegations support a conclusion "that the PTO examiner in the United States would have considered the [prior art] as material references" because the examiners in Europe and Japan did. (Id.)

As LG persuasively observes, "the [Manual of Patent Examining Procedure] bolsters the inference of materiality." (Opposition Brief, Dkt 25, p. 21) The MPEP states, "[t]he inference that such prior art or other information is material is especially strong where it has been used in rejecting the same or similar claims in the foreign application." MPEP § 2001.06(a).[7] TVnGO does not directly address this argument in

---

[7] See also, LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 2000 WL 33341185, at *10 (D. Del. Aug. 8, 2000) ("Materiality of an uncited prior art reference can be shown by evidence that the applicant cited the prior art in related foreign prosecutions. If the uncited prior art provided a basis for a foreign patent office's rejection of counterpart application, then the inference of materiality is especially

9

its reply brief. Rather, it asserts that LG has not sufficiently pleaded materiality because it has not provided a "substantive analysis" of how the '575 Publication and the EP Publications affect each claim of the Patents-in-Suit. (Reply Brief, Dkt 26, p. 7)  TVnGO, however, provides no legal support for its argument which, if accepted, would impose a higher burden of pleading than Dealno Farms and Exergen require.[8]  At the pleadings stage, TVnGO need only plead "facts from which the court may reasonably infer" that the omitted information was material. Delano Farms, 655 F.3d at 1350 (citing Exergen). As the MPEP explains, the facts LG alleges strongly support the reasonable inference that the '575 Publication and the EP Publications were material to the prosecutions of the Patents-in-Suit. Accordingly, the Court holds that LG has sufficiently pleaded facts supporting a reasonable inference of materiality as to the '575 Publication and the EP Publications.

B. **Specific Individuals**

---

strong.") (citing MPEP § 2001.06(a)) aff'd 275 F.3d 1347 (Fed. Cir. 2001) (quoting MPEP § 2001.06(a)); see generally, Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180 (Fed. Cir. 1995) ("While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith.").

[8] The Court also questions how a meaningful claim analysis could possibly be done before the Court has construed the claims of the Patents-in-Suit.

Next, TVnGO argues that LG does not identify "which specific individuals it contends had specific intent to commit fraud on the PTO." (Reply Brief, Dkt 26, p. 5) While some paragraphs of LG's Thirteenth Affirmative Defense are exceedingly vague[9], other allegations are sufficiently particularized. The pleading specifically identifies Mr. Klima and Mr. Kavrukov and describes what they allegedly did, and failed to do, during the prosecutions of the Patents-in-Suit. For example, LG alleges that Mr. Klima untimely filed the non-compliant IDS in the '220 patent prosecution, and then failed to act on the USPTO's Notification of Non-Compliant IDS. (TAD ¶¶ 22-24) Similarly, LG alleges that Mr. Kavrukov filed an incomplete IDS in the '621 patent prosecution. (Id. ¶ 28)

Accordingly, the Court holds that LG's pleading with respect to Mr. Klima and Mr. Kavrukov[10] is sufficiently particularized.

---

[9] See, e.g., TAD ¶ 15 ("one or more of the participants in the prosecution of the applications that led to the Patents-in-Suit failed to satisfy their duty of disclosure with respect to the Patents-in-Suit."); see also infra. n. 10.

[10] In its Opposition Brief, LG argues that "[a]t the very least, LGE alleges that Messrs. Klima and Kavrukov and/or Ms. Hopkins (prosecuting attorneys) and Mr. Yaakov Merlin (named inventor of the Patents-in-Suit) have committed fraud on the Patent Office." (Opposition Brief, Dkt 25, p. 9) The Thirteenth Affirmative Defense, as currently pleaded, does not allege with any specificity what Ms. Hopkins or the named inventor did or did not do during the prosecutions of the Patents-in-Suit. In the event that discovery reveals additional relevant information as to these individuals' participation in

**C. Intent**

Lastly, TVnGo argues that "[a]ny inference that someone at TVnGO intentionally tried to deceive the PTO based on these [alleged] facts would be unreasonable[11] because the references were in fact disclosed." (Moving Brief, Dkt 23-1, p. 18; see also Reply Brief, Dkt 26, p. 3) Tellingly, however, TVnGO does not address the details of allegedly when or how the references were disclosed. Yet, it is precisely these details that support LG's theory of its case. For example, while LG does, indeed, allege that the EP Publications were fully disclosed to the PTO in a compliant IDS (TAD ¶ 38), the more salient alleged fact is the timing of that disclosure. LG alleges that the EP Publications and their materiality were known to Mr. Klima and Mr. Kavrukov as early as 2011 (Id. ¶ 35), and should have been fully disclosed as prior art in the prosecutions of all five of the Patents-in-Suit, but LG alleges that the EP Publications were not disclosed until 2017, during the prosecution of the last patent at issue, the '621 patent (Id. ¶ 38). Thus, even if the disclosure of the EP Publications in the '621 patent

---

the asserted inequitable conduct, LG may file, if appropriate, a Motion to Amend.

[11] "[A]n inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy the Federal Rules of Civil Procedure's heightened pleading requirement." Exergen, 575 F.3d at 1329 n.5.

12

prosecution would preclude a claim of inequitable conduct during the prosecution of the '621 patent[12], it does not preclude claims of inequitable conduct with regard to the other four Patents-in-Suit.

TVnGO invites the Court to conclude, based solely on the alleged fact that the EP Publications were properly disclosed one out of five times, that no inference of intent to defraud may logically be drawn as to any of the Patents-in-Suit. According to TVnGO, if it had a specific intent to deceive, it would have withheld the reference altogether, rather than disclose it, which would only give "future challengers" a "roadmap" of an invalidity argument. (Moving Brief, Dkt 23-1, p. 19) While this is one possible inference to be drawn from the alleged facts, it is not the only inference. An equally plausible inference is that an intentionally delayed disclosure during the last patent prosecution is not inconsistent with a specific intent to deceive in earlier prosecutions.[13] Thus, the Court disagrees that the allegations concerning disclosure of

---

[12] The Court does not rule on this issue at this time, because, as explained next, LG has alleged sufficient facts to support a claim of inequitable conduct during the prosecution of the '621 patent based on the alleged inadequate disclosure of the '575 Publication in the '621 patent prosecution.

[13] For example, LG suggests that failing to disclose the EP Publications during the '220 patent prosecution could have benefitted TVnGO independent of that reference's impact on the '621 patent. (See Opposition Brief, Dkt 25, p. 22)

the EP Publications during the '621 patent prosecution preclude all inferences of specific intent to deceive in other earlier related prosecutions.

Moreover, LG alleges that the '575 Publication was never *properly* disclosed in any prosecution-- another detail TVnGO's "disclosure" argument ignores.  TVnGO, through Mr. Klima and Mr. Kavrukov, should have disclosed the '575 Publication on five separate occasions (i.e., during the prosecution of each Patent-in-Suit) yet allegedly completely failed to disclose during the second, third, and fourth opportunities to do so.  (TAD ¶¶ 25-38)  During the first and fifth opportunities, LG alleges that the '575 Publication was improperly disclosed (Id. ¶¶ 22, 28) such that at no time during the prosecutions of any of the Patents-in-Suit did the USPTO have before it all of the information materially relevant to the patent prosecutions.

Accordingly, the Court holds that LG has pleaded sufficient facts to support a reasonable inference of specific intent to deceive during the prosecutions of all five Patents-in-Suit.

**IV.**

For the above-stated reasons, TVnGO's motion will be denied.  An Order accompanies this Opinion.

Dated:  May 23, 2019         __s/ Renée Marie Bumb____
                             Renée Marie Bumb, U.S.D.J.