IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TVnGO LTD. (BVI),<br><br>    Plaintiff,<br><br>    v.<br><br>LG ELECTRONICS, INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>    Defendants. | Civil No. 18-10238 (RMB/KMW)<br><br>**OPINION** |

APPEARANCES:

EYET LAW LLC
By: Matthew T. Eyet, Esq.
7 Livingston Avenue, Suite 1105
New Brunswick, New Jersey 08901

    and

DUNLAP BENNETT & LUDWIG PPLC
By:  Charles E. Cantine, Esq.
     Joseph Diamante, Esq.
349 Fifth Avenue
New York, New York 10036
       *Counsel for Plaintiff*

WALSH PIZZI O'REILLY FALANGA LLP
By:  Liza M. Walsh, Esq.
     Selina M. Ellis, Esq.
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, New Jersey 07102

    and

MORGAN, LEWIS & BOCKIUS LLP
By:  Natalie Bennett, Esq.
     Collin W. Park, Esq.
     Eric Kraeutler, Esq.

1

      Ghee J. Lee, Esq.
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
          *Counsel for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

      In this patent infringement suit, Plaintiff TVnGO Ltd. (BVI) asserts that Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"), are infringing five of TVnGO's patents[1] which claim methods and devices that make televisions "smart"-- <u>i.e.</u>, able to display both television content and internet streaming content.  Presently before the Court is the issue of indefiniteness, which LG raised in connection with the Court's claim construction inquiry.  The Court has carefully considered the parties' pre-hearing submissions and post-hearing briefs, the parties' presentations made at the claim construction hearing held on January 8, 2020, as well as supplemental briefing which this Court ordered on March 6, 2020.  For the reasons stated herein, the Court holds that '220 Patent claims 1, 9, 10, 13, 17, and 20; '945 Patent claims 1, 4, 8, 9, 12, 15, 19, 21; '696 Patent claims 1, 9, 10, 13, 17 and 20; '339 Patent claims 1, 4-7, 12-15 and 18; and '621

---

[1] The Patents-in-Suit are U.S. Patent Nos. 8,132,220; 9,124,945; 9,392,339; 9,407,969; and 9,794,621, respectively, the '220 Patent, the '945 Patent, the '339 Patent, the '969 Patent and the '621 Patent.  Each of the '945, '339, and '969 patents are continuations of the '220 Patent.  The '621 Patent is a continuation of the '969 Patent.

2

Patent claims 1, 4, 9, 11 are indefinite, and therefore not amenable to construction.[2]

**I.**

According to TVnGO, the main inventive feature of its technology to which the Patents-in-Suit are addressed is the generation and display of "overlays" which appear on a user's (i.e., a person's) television screen, thereby creating a user-friendly mechanism through which a user can simultaneously view broadcast TV content and Internet content. [Transcript p. 53, 60]  Thus, for example, in Figures 7a, 7b and 7c of the Patents-in-Suit, which depict a television set (item 40), items 42 through 45 are overlays, or icons[3], containing Internet content, and item 41 is broadcast TV content:

---

[2]  In light of this holding, the Court need not reach, and therefore does not reach, the issue of whether the terms "combiner unit" and "combiner circuit", as used in '220 Patent claims 1, 13, and 17; '945 Patent claims 1-10, 12, and 18; '339 Patent claims 1-17, 19, 20; and '969 Patent claims 1, 13, and 17 are indefinite. [See TVnGO's Post-Hearing Brief, Dkt No. 75, p. 3]

[3]  At the claim construction hearing, TVnGO explained, by way of example, that the icon could take the form of a commonly recognized logo, such as the Netflix logo. [Transcript p. 60, 95, 100]

3



FIG. 7a

FIG. 7b

FIG. 7c

According to the specifications, if a user wishes to view the content represented by a particular overlay-- for example, item 42-- she may use a particular key on her remote control to select the desired overlay, which will result in the display of a secondary window, item 45. Engaging the same key for a second time will enlarge the secondary window to occupy substantially the whole area of the television screen, as shown in Figure 7c. Engaging the same key for a third time will cause the television screen display to revert to the situation shown in Figure 7a. ['220 Patent, 7:25-50; '945 Patent, 7:35-60; '339 Patent, 7:28-50; '969 Patent, 7:35-60; '621 Patent, 7:43-65]. The parties dispute whether the Patents-in-Suit "particularly . . . and

distinctly" disclose, 35 U.S.C. § 112(b), how the patented technology functions to produce items 42 through 45.

The claim terms primarily at issue are "overlay activation criterion" and "overlay activation signal."[4] Copies of the Patents-in-Suit are attached to this Opinion as Exhibits A through E.[5]

## II.

Patent claims must "particularly point[] out and distinctly claim[] the subject matter" of the invention. 35 U.S.C. § 112(b). If a claim does not do so, it is invalid as indefinite. Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 902 (2014). "[A] patent claim is indefinite if, when 'read in light of the specification delineating the patent, and the prosecution history, the claim fails to inform, with reasonable certainty, those skilled in the art[6] about the scope of the invention.'"

---

[4] The term "special overlay activation signal" appears in the '954 and '621 Patents, however the parties make no separate, independent arguments with respect to the word "special." Thus, the parties' arguments, and the Court's analysis, applies equally to both "overlay activation signal" and "special overlay activation signal."

[5] See also Docket Entries 1-1 ('220 Patent), 1-2 ('945 Patent), 1-3 ('339 Patent), 1-4 ('969 Patent), and 1-5 ('621 Patent).

[6] The parties have stipulated on the record that, for the purposes of the issues addressed herein, the parties' differing formulations of a person skilled in the art ("POSA") have no material impact on claim construction. [Transcript, p. 16-17]

5

BASF Corp. v. Johnson Matthey Inc., 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quoting Nautilus). "'The internal coherence and context assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law.'" United Access Techs., LLC v. AT & T Corp., 757 F. App'x 960, 969 (Fed. Cir. 2019) (quoting Teva Pharm. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335, 1342 (Fed. Cir. 2015)).

Likewise, claim construction is an issue of law, Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), and "[a] determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a conclusion that is drawn from the court's performance of its duty as the construer of patent claims." Fisher-Price, Inc. v. Graco Children's Prod., Inc., 154 F. App'x 903, 906 (Fed. Cir. 2005) (internal citation and quotation omitted); see also, Biosig Instruments, Inc. v. Nautilus, Inc., 783 F.3d 1374, 1377 (Fed. Cir. 2015) ("In the face of an allegation of indefiniteness, general principles of claim construction apply.").[7]

---

[7] TVnGO asserts that the Court should defer its indefiniteness ruling "until TVnGO has had an opportunity to take fact discovery." [Post-hearing brief, Dkt No. 75, p. 3; Supplemental brief, Dkt. 81, p. 9-10]  The Court concludes, however, that discovery in this particular case would not be helpful to the Court's legal inquiry given the nature of the claims' indefiniteness.  As discussed herein, the claims, as written, contain inherent, irreconcilable inconsistencies.  Even if, as LG hypothesized at the claim construction hearing,

### III.

In conducting the indefiniteness inquiry, the Court considers: the language of the claims; the specifications; and the prosecution histories of the Patents-in-Suit. BASF Corp, 875 F.3d at 1365 (quoting Nautilus). Section A considers the claims and the specifications of the Patents-in-Suit. Section B addresses the prosecution histories.

### A.

As LG has persuasively demonstrated, the use of the terms "overlay activation criterion" and "overlay activation signal"-- neither of which are terms of art, nor defined by the specifications[8]-- create irreconcilable inconsistencies into the Patents-in-Suit. These inconsistencies manifest not only when a POSA views each Patent-in-Suit individually ("intra-patent inconsistencies"), but as well as when a POSA attempts to understand the terms across the span of the Patents-in-Suit

---

discovery were to reveal that persons skilled in the art at LG subjectively understood what TVnGO's patents claimed [Transcript, p. 66-67], that evidence could not overcome the legal conclusion that the claims, as drafted, and read in light of the specification and prosecution history, do not inform a POSA, with a reasonable amount of certainty, the scope of the invention.

[8] TVnGO does not disagree with these findings. Contrast Phillips, 415 F.3d at 1315 ("the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal citation and quotation omitted).

("inter-patent inconsistencies").  Consequently, these inconsistencies render each Patent-in-Suit indefinite.

**Intra-Patent Inconsistencies**

Three intra-patent inconsistencies exist: (1) the '220 and '969 Patents both have the same inconsistency; (2) the '945 and '621 Patents both have another inconsistency; (3) and the '339 Patent has yet another inconsistency.

First, independent claims 1 and 13 of each of the '220 and '969 Patents use the term "overlay activation criterion" in a manner that is inconsistent with the use of that same term in dependent claims 9 and 20, and the specifications of both patents.  In claims 1 and 13, "overlay activation criterion" must necessarily come from the Internet because the claim states that "overlay activation criterion" is a component of the "overlay-enabling digital data" which data, the claim explicitly states, is provided "<u>over the Internet</u>." ['220 Patent, 8:61-9:7, 10:25-40; '969 Patent, 9:7-20, 10:36-50]  However, claims 9 and 20, as well as the specifications, state that "user command information" may be a component of "overlay activation criterion" and that such information is provided at the user's premises and <u>not over the Internet</u>. ['220 Patent, 7:2-6, claim 3, claim 15; '969 Patent, 7:10-15, claims 3 and 15]  Thus, the intrinsic evidence presents a POSA with irreconcilably inconsistent information: the '220 and '969 Patents indicate

8

that "overlay activation criterion" comes from the Internet and simultaneously not from the Internet-- i.e., from the user's premises.  To state it more to the point, the Patents fail to inform a POSA of the invention's scope with reasonable certainty.

Second, the claims of the '945 and '621 Patents are internally inconsistent with their own specifications.  The claims in which "overlay activation signal" appear refer to a signal that causes overlays stored in memory to be displayed. [See, e.g., '945 Patent, claim 1 at 9:23-26, claim 12 at 10:35-38; '621 Patent, claim 1 at 9:21-24]  However, the specifications of both patents use "activate" to refer only to the pressing of a remote control key corresponding to a displayed overlay thereby "activating" the overlay to display the IP content to which the overlay corresponds. ['945 Patent, 7:16-34, 45-49; '621 Patent, 7:25-42, 52-57]  Thus, a POSA looking at either the '945 Patent or the '621 Patent cannot know what happens upon receipt of an overlay activation signal because the patents teach two different results.  A POSA is left to wonder, or in other words, is confused: does the overlay activation signal result in the display of a stored overlay, or does it result in the display of IP content?  The patents provide no guidance as to how a POSA could confidently choose between the two possibilities.  See Media Rights Techs., Inc. v.

9

Capital One Fin. Corp., 800 F.3d 1366, 1371 (Fed. Cir. 2015) (explaining that indefiniteness results when "no informed and confident choice is available among the contending definitions.").

Third, and similarly, the '339 Patent's use of the term "overlay activation criterion" is inconsistent with the meaning of "activating" an overlay in its own specification.  Claim 1 of the '339 Patent states that an overlay activation criterion causes the display of overlays[9], whereas the '339 Patent's specification, like the specifications of the '945 and '621 Patents, indicates that activating an overlay results in the display of IP content. ['339 Patent, 7:11-27]

TVnGO's attempts to give clarity to the scope of the inventions are unpersuasive.  Rather than reconcile inconsistencies, or provide clear answers to the Court's questions-- neither of which TVnGO has been able to do, despite several opportunities to do so-- TVnGO asks the Court to reject LG's arguments because they are merely "attorney argument" "unsupported by admissible evidence." [Supplemental Brief, Dkt. 81, p. 2]  LG's arguments, however, are supported by the Patents themselves, which, of course, are admissible evidence.  The

---

[9]  As discussed infra, this use of overlay activation criterion in the '339 Patent is irreconcilably inconsistent with the '621 Patent insofar as the '621 Patent teaches that an overlay activation signal-- not criterion-- causes the display of overlays.

10

Court has endeavored to construe the claims, most of which TVnGO contends needs no construction because their meaning is plain. Try as it might, the Court has been unable to do so. Having considered the claims, specifications, and prosecution histories of the Patents-in-Suit, as set forth supra (and infra), the Court cannot construe the claims with any confidence. See also, United Access Techs., 757 F. App'x at 969 ("The internal coherence and context assessment of the patent, and whether it conveys claim meaning with reasonable certainty, are questions of law.").

**Inter-Patent Inconsistencies**

As this Court's above discussion of the '339 and '621 Patents has previewed, "overlay activation criterion" and "overlay activation signal" are used interchangeably between the '339 Patent and the '621 Patent to achieve the same result: display of an overlay. [See '339 Patent, claim 1, line 8-10; '621 Patent, claim 1, lines 21-24] However, the specifications provide different meanings for these two words. "Criterion," according to the specifications, means condition, such as time and channel information [see, e.g., '339 Patent 3:61-67; '621 Patent 4:26-28], whereas "signal" means a selection or indication from the user [see, e.g. '339 Patent 4:64-67; '621 Patent 5:8-12]. According to the specifications, and as TVnGO states in its brief, the "criterion" comes from the Internet,

11

whereas the "signal" comes from the user via the remote control. [Dkt. No. 75, p. 8, 10, 14] The simultaneous use of two different words with different meanings to achieve the same result-- display of an overlay-- produces an irreconcilable inconsistency within the Patents-in-Suit which cannot inform a POSA, with reasonable certainty, the scope of the invention. Because "no informed and confident choice is available among the contending definitions," Media Rights Techs., Inc., 800 F.3d at 1371, the claim terms are indefinite. Contrast Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").

Similarly, in the '220 Patent, for example, when the overlay activation criterion is met, the result is the generation of an overlay. ['220 Patent, claim 1, lines 9-11; see also '969 Patent, claim 1, lines 21-24] In contrast, however, in the '339 Patent, the result of the overlay activation criterion being met is the display of an overlay. ['339 Patent, claim 1, lines 8-10] TVnGO maintains this is exactly as it should be-- that "when we say 'generate' [an overlay] what we mean is display." [Transcript, p. 56; see also p. 98, 108 (using "display" and "generate" interchangeably); Dkt. 75, p. 13 ("When the claim language describes displaying the overlay, it is

12

referring to generating the overlay."); Dkt. No. 78, p. 2 ("'generating' . . . means generating 'display screens'")] However, TVnGO cannot point to anything in the claim language, or anywhere else, from which a POSA could discern why two different words[10] are used to denote the same result. Instead, TVnGO insists, without any intrinsic evidentiary support, that two different words have the same meaning.[11] This inherent inconsistency injects even more uncertainty into the Patents-in-Suit.

Confronted with these irreconcilable inconsistencies, TVnGO mischaracterizes LG's argument. According to TVnGO, "LG's indefiniteness arguments as to overlay activation criterion and

---

[10] The verb "generate" means to create or produce or bring into existence, whereas the verb "display" means to show or reveal something already in existence. Merriam-Webster Unabridged Dictionary. This Court is mindful of the Federal Circuit's guidance that "'a general-usage dictionary cannot overcome art-specific evidence of the meaning of a claim term.'" Phillips, 415 F.3d at 1322 (internal citation and quotation omitted). This Court's use of a general-usage dictionary in this circumstance is merely to illustrate the absence of any art-specific evidence to inform the words' meanings. See id. at 1322-23 ("judges . . . may [] rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.") (internal citation and quotation omitted).

[11] TVnGO asserts that "LG's entire 'generate' versus 'display' argument is nothing more than its *characterization* of the claims, divorced from the actual claim language." (Dkt. 78, p. 3)(italics in the brief). However, the failing argument is TVnGO's insistence that "generate" and "display" mean the same thing.

overlay activation signal are premised solely on the proposition that claim terms *must* have the same meaning across all patents." [Dkt. No. 75, p. 3 (italics in the brief)] LG's argument, however, is not so broad. LG asserts, and this Court agrees, the reason the claim terms are indefinite is not simply because the terms are used differently. Rather, the terms are indefinite because the different uses cannot be reconciled in a manner that informs a POSA, to a reasonable degree of certainty, of the meaning of claim terms.

Moreover, in an attempt to fill in the blanks of the Patents-in-Suit, TVnGO presents the testimony of its expert, Dr. Sprenger. In explaining to the Court what a POSA would understand, however, Dr. Sprenger actually creates more blanks. With respect to "overlay activation criteria," Dr. Sprenger explains,

> [i]n the most basic situation where there is no other information from the user regarding preferences for IP content, or specific times or channels to view content (e.g., all times and all channels are available), the TV-Internet Integration Box checks its own timetable stored in memory (see, e.g., '220 Patent at 4:28-32), determines whether the overlay activation criteria is met (e.g., confirming that the user is watching Channel 3 at 7:00 PM which would match the overlay activation criteria embedded in OEDD [the overlay enabling digital data] 2), and the TV-Internet Integration Box combines the overlay-enabling digital data with the TV video signal received at the first input, outputting the combined video signal to the TV set.

(Dkt. 75-2, Sprenger Suppl. Decl. ¶ 12)

First, nothing in the Patents-in-Suit discusses at all a situation where "there is no other information from the user regarding preferences for IP content." Indeed, Dr. Sprenger's citation to the '220 Patent specification provides no support for his statements; 4:28-32 of the '220 Patent explains what happens when a user / subscriber *does* provide information concerning "what type of IP data is to be displayed and when." ['220 Patent 4:31-32].

Second, Dr. Sprenger's explanation introduces an entirely new concept that also has no support anywhere in the Patents-in-Suit: different types of "overlay enabling digital data" ("OEDD")-- e.g., "OEDD 1"; "OEDD 2" and "OEDD 3." (Dkt. 75-2, Sprenger Suppl. Decl. ¶ 10-12, emphasis added) The fact that Dr. Sprenger, in attempting to explain what the Patents-in-Suit disclose, must create a new embodiment of the patented technology, using entirely new terms, clearly illustrates that the specifications do not inform a POSA with a reasonable certainty as to what the Patents-in-Suit claim.

**B.**

Lastly, the prosecution histories do not save the disputed claims from indefiniteness. The histories provide nothing more than what limited information is disclosed by the specifications: "overlay activation criterion" can include timing and channel information, and an overlay activation signal

15

is received from a user. [See Dkt. 75, p. 5, 10]  As discussed above, this information alone does not allow a POSA to reconcile the claims' inconsistencies.

Moreover, the Court is unpersuaded by TVnGO's argument that the patent examiners must not have found the terms indefinite because if they had, they would not have granted the Patents. First, whether an individual patent examiner, or examiners, understood what the claim terms meant is not the standard for indefiniteness.  Second, the argument is tantamount to a statement of the basic statutory principle that a patent is presumed valid, 35 U.S.C. § 282.  This principle is already captured by the allocation of the burden of proof to LG (as the party seeking to invalidate the patents), id., and the standard of proof by clear and convincing evidence, which this Court has employed. Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 95 (2011).  The presumption alone cannot rebut the intrinsic evidence demonstrating that the disputed claim terms are indefinite.

Sonix Tech. Co. v. Publications Int'l, Ltd., 844 F.3d 1370 (Fed. Cir. 2017), upon which TVnGO relies, does not stand for the proposition that a patent examiner's knowing allowance of claims *by itself* defeats a conclusion of indefiniteness.  In Sonix, the Court reversed the District Court's indefiniteness holding because "the intrinsic evidence provided guidance as to

16

the scope of the claims." 844 F.3d at 1377. In this case, as explained, the intrinsic evidence provides no such guidance. To the contrary, it provides confusion. Indeed, Sonix expressly states that "application [of the disputed claim terms] by the examiner and an expert do not, *on their own*, establish" definiteness. 844 F.3d at 1380 (emphasis added).

In the Court's final analysis, a review of the claim terms, the specifications, and the prosecution histories leave the Court with unresolved inconsistencies as well as unanswered questions.

**IV.**

Because the Court cannot construe the claims, they are indefinite. Accordingly, for the above reasons, the Court holds that '220 Patent claims 1, 9, 10, 13, 17, and 20; '945 Patent claims 1, 4, 8, 9, 12, 15, 19, 21; '696 Patent claims 1, 9, 10, 13, 17 and 20; '339 Patent claims 1, 4-7, 12-15 and 18; and '621 Patent claims 1, 4, 9, 11 are indefinite, and therefore not amenable to construction. An Order accompanies this Opinion.


Dated:   April 16, 2020              __s/ Renée Marie Bumb____
                                     Renée Marie Bumb, U.S.D.J.

17